# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

U.S. BANK NATIONAL ASSOCIATION, AS TRUSTEE, AS SUCCESSOR IN INTEREST TO BANK OF AMERICA, NATIONAL ASSOCIATION, AS SUCCESSOR BY MERGER TO LASALLE BANK NATIONAL ASSOCIATION, FOR THE REGISTERED HOLDERS OF LB-UBS COMMERCIAL MORTGAGE TRUST 2006-C6, COMMERCIAL MORTGAGE PASS-THROUGH CERTIFICATES SERIES 2006-C6

       PLAINTIFF,

VERSUS

OAKBROOK APARTMENTS LLC

       DEFENDANT.

CIVIL ACTION NO. 14-340-SCR

MAGISTRATE JUDGE STEPHEN C. RIEDLINGER

## CONSENT JUDGMENT

In light of the pending Motion for Summary Judgment filed by U.S. Bank National Association, as Trustee, as Successor in Interest to Bank of America, National Association, as Successor by Merger to LaSalle Bank National Association, for the Registered Holders of LB-UBS Commercial Mortgage Trust 2006-C6, Commercial Mortgage Pass-Through Certificates Series 2006-C6 ("**Plaintiff**"), the Memorandum in Support of Motion for Summary Judgment filed by Plaintiff, the Verified Complaint to Collect Promissory Note, to Foreclose on Mortgage, for Issuance of a Writ of Sequestration, and for Appointment of a Keeper, the parties have agreed on a judgment regarding the aforementioned motion, and accordingly submit this Consent Judgment;

**IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that judgment is **GRANTED** in favor of Plaintiff and against Oakbrook Apartments LLC (the "**Defendant**") Defendant in the total amount of TWENTY-FOUR MILLION ONE HUNDRED NINETY-SEVEN THOUSAND NINE HUNDRED EIGHTY-TWO DOLLARS AND 38/100 ($24,197,982.38), said total consisting of the following amounts owed pursuant to the Promissory Note ("Note") and the Mortgage, Assignment of Rents and Security Agreement ("Mortgage") executed by Defendant Oakbrook Apartments LLC, on January 30, 2006: (1) the principal amount of $21,136,047.83; (2) accrued but unpaid interest at the non-default rate of 6.375% in the amount of $1,931,306.37 for the period from January 11, 2014 through June 10, 2015; (3) interest at the default surcharge rate of 3.00% in the amount of $852,543.75 for the period from February 12, 2014 through June 10, 2015 and (4) Property Protection Advances, including legal fees and expenses, environmental expenses and other expenses of plaintiff in the total amount of $278,084.43;

**IT IS FURTHER ORDERED, ADJUDGED, AND DECREED** that the Mortgage and Security Agreement (the "**Mortgage**") executed by Defendant and recorded in the records of East Baton Rouge Parish, State of Louisiana (the "**Recording Office**"), at Original 767, Bundle 11855, grants Plaintiff a valid and effective security interest in the property more fully described in **Exhibit "1",** attached hereto, pursuant to Louisiana law, for all sums due under this Judgment.

**IT IS FURTHER ORDERED, ADJUDGED, AND DECREED** that the Assignment of Leases and Rents (the "**Assignment**") executed by Defendant, and recorded in the Recording Office at Original 778, Bundle 11855, grants Plaintiff a valid and effective security interest pursuant to Louisiana law in any and all leases, together with all rents, earnings, income, profits,

BA SFC 95887 v1
2016798-000188  07/20/2015

benefits and advantages arising from the property more fully described in **Exhibit "1"**, for all sums due under this Judgment.

**IT IS FURTHER ORDERED, ADJUDGED, AND DECREED** that the Mortgage, Security Agreement and the Assignment of Leases and Rents referenced herein grants Plaintiff a valid and effective security interest pursuant to Louisiana law in that certain litigation, and its related claims and causes of action, rights and proceeds related thereto, pending in the 19th Judicial District Court, Parish of East Baton Rouge, State of Louisiana, Suit No. 621,396, styled *State of Louisiana, Department of Transportation and Development vs. Oakbrook Apartments, LLC*, for all sums due under this Judgment.

**IT IS FURTHER ORDERED, ADJUDGED, AND DECREED** that pursuant to the (i) Mortgage, (ii) Assignment, (iii) UCC-1 Financing Statement filed in the Recording Office at File No. 17-1299778 (the "**Secretary of State Financing Statement**"); (iv) UCC-3 Continuation reflecting the continuation of the Secretary of State Financing Statement filed in the Recording Office at File No. 17-1360637; (v) UCC-3 Amendment reflecting the assignment of the Secretary of State Financing Statement filed at the Recording Office at File No. 17-1403194; (vi) UCC-3 Amendment reflecting the assignment of the Secretary of State Financing Statement filed at the Recording Office at File No. 17-1403195; (vii) UCC-3 Amendment reflecting the assignment of the Secretary of State Financing Statement filed at the Recording Office at File No. 17-1403196; and (viii) UCC-3 Amendment reflecting the assignment of the Secretary of State Financing Statement filed at the Recording Office at File No. 17-1403197, Plaintiff holds a valid and effective security interest in the collateral more fully described in **Exhibit "2"**, attached hereto, pursuant to Louisiana law, for all sums due under this Judgment.

BA SFC 95887 v1
2016798-000188  07/20/2015

**IT IS FURTHER ORDERED, ADJUDGED, AND DECREED** that pursuant to the (i) Mortgage, (ii) Assignment, (iii) UCC-1 Financing Statement filed in the Recording Office at File No. 17-1299779; (iv) UCC-3 Continuation reflecting the continuation of the Secretary of State Financing Statement filed in the Recording Office at File No. 17-1360636; (v) UCC-3 Amendment reflecting the assignment of the Secretary of State Financing Statement filed at the Recording Office at File No. 17-1403194; (vi) UCC-3 Amendment reflecting the assignment of the Secretary of State Financing Statement filed in the Recording Office at File No. 17-1403199; (vii) UCC-3 Amendment reflecting the assignment of the Secretary of State Financing Statement filed at the Recording Office at File No. 17-1403200; and (viii) UCC-3 Amendment reflecting the assignment of the Secretary of State Financing Statement filed in the Recording Office at File No. 17-1403201; (ix) UCC-3 Amendment reflecting the assignment of the Secretary of State Financing Statement filed at the Recording Office at File No. 17-1403215; and (x) UCC-3 Amendment reflecting the assignment of the Secretary of State Financing Statement filed at the Recording Office at File No. 17-1403216, Plaintiff holds a valid and effective security interest in the collateral more fully described in **Exhibit "2"**, attached hereto, pursuant to Louisiana law, for all sums due under this Judgment.

**IT IS HEREBY FURTHER ORDERED, ADJUDGED, AND DECREED** that this Judgment shall be immediately executory upon rendition except as agreed otherwise in writing by all the parties, all parties having absolutely waived any and all applicable appeal periods provided by the Federal Rules of Civil Procedure.

**THUS DONE AND SIGNED** in Baton Rouge, Louisiana, on the 27th day of July, 2015.

STEPHEN C. RIEDLLINGER
UNITED STATES MAGISTRATE JUDGE

BA SFC 95887 v1
2016798-000188  07/20/2015

**JUDGMENT APPROVED AS TO FORM BY:**

**PHELPS DUNBAR LLP**

/s/ Amanda W. Messa
AMANDA W. MESSA  (30108)
II City Plaza
400 Convention Street, Suite 1100
Baton Rouge, LA 70802
Telephone: 225-376-0274
Facsimile: 225-381-9197

*Counsel for Oakbrook Apartments LLC*

**BAKER, DONELSON, BEARMAN,
CALDWELL & BERKOWITZ, P.C**.

/s/ Stephen F. Chiccarelli
STEPHEN F. CHICCARELLI (LA # 16858)
450 Laurel Street
Chase Tower North, 20th Floor
Baton Rouge, LA 70801
Telephone: (225) 381-7000
Facsimile: (225) 343-3612

and

TIMOTHY M. LUPINACCI (LUP001)
420 Twentieth Street North
Wells Fargo Tower, Suite 1400
Birmingham, Alabama 35203
Telephone: (205) 328-0480
Facsimile:  (205) 322-8007
*Counsel for U.S. Bank National
Association, as Trustee, as Successor-
in-Interest to Bank of America, National
Association, as Successor by   Merger  to
Lasalle Bank National Association, for
the Registered Holders of LB-UBS
Commercial Mortgage Trust 2006-c6,
Commercial Mortgage Pass-Through
Certificates Series 2006-C6*

## ITEM I:

## TRACT A

A CERTAIN TRACT OR PARCEL OF LAND, situated in the Parish of East Baton Rouge, State of Louisiana, Section 65, Township 7 South, Range 1 West, and designated as TRACT "A" on a survey by Paul C. Boudreaux, Land Surveyor, dated September 20, 1973, revised November 20, 1973 (the "Boudreaux Survey"), entitled "Map showing the Resubdivision of a 14.60 Acre Portion of Lots 12, 13 & 14, Arlington Plantation and the 0.67 Acre Section 1 of Lot 12, being the John H. Morgan Tract into Lots 'A', 'B', & 'C'..." recorded at Original 46, Bundle 8522, official records of East Baton Rouge Parish, State of Louisiana, and described according to the Boudreaux Survey as follows:

Commencing at the intersection of the property line separating Nestledown and Arlington Plantation with the easterly right of way line of Louisiana State Highway 30 (Nicholson Drive); thence in a northwesterly direction along the aforesaid right of way line of Louisiana State Highway 30, North 32° 29' 00" West a distance of 562.75 feet to a point and corner, said point being the POINT OF BEGINNING;

Thence continuing in a northwesterly direction along the aforesaid right of way line North 32° 29' 00" West a distance of 141.96 feet to a point and corner, said point being the high bank of Bayou Fountain;

Thence continuing in a southeasterly direction along the high bank South 66° 11' 09" East a distance of 36.04 feet to a point and corner;

Thence proceed North 32° 29' 00" West a distance of 63.07 feet to a point and corner;

Thence proceed South 66° 11' 09" East a distance of 51.99 feet to a point and corner;

Thence proceed North 85° 11' 07" East a distance of 44.22 feet to a point and corner;

Thence proceed North 74° 45' 03" East a distance of 173.61 feet to a point and corner;

Thence proceed North 84° 12' 27" East a distance of 85.70 feet to a point and corner;

Thence go South 81° 41' 32" East a distance of 32.03 feet to a point and corner;

Thence proceed South 57° 27'06" West a distance of 208.66 feet to a point and corner;

Thence proceed South 32° 32' 54" East a distance of 22.00 feet to a point and corner;

Thence proceed South 57° 27' 06" West a distance of 110.00 feet to a point and corner;

Thence proceed North 32° 32' 54" West a distance of 22.00 feet to a point and corner;

Thence proceed South 57° 27' 06" West a distance of 36.00 feet to the POINT OF BEGINNING.

(Continued)

BR.453197.2



EXHIBIT

ITEM II:

## TRACT B

A CERTAIN TRACT OR PARCEL OF LAND, situated in the Parish of East Baton Rouge, State of Louisiana, Section 65, Township 7 South, Range 1 West, and designated as TRACT "B" on a survey by Paul C. Boudreaux, Land Surveyor, dated September 20, 1973, revised November 20, 1973 (the "Boudreaux Survey"), entitled "Map showing the Resubdivision of a 14.60 Acre Portion of Lots 12, 13 & 14, Arlington Plantation and the 0.67 Acre Section 1 of Lot 12, being the John H. Morgan Tract into Lots 'A', 'B', & 'C'..." recorded at Original 46, Bundle 8522, official records of East Baton Rouge Parish, State of Louisiana, and described according to the Boudreaux Survey as follows:

Commencing at the intersection of the property line separating Nestledown and Arlington Plantation with the easterly right of way of Nicholson Drive and/or Louisiana Highway 30; thence along said right of way North 32° 29' West 562.75 feet to the POINT OF BEGINNING; from said POINT OF BEGINNING, go North 57° 27' 06" East a distance of 36.00 feet to a point and corner;

Thence go South 32° 32' 54" East a distance of 22.00 feet to a point and corner;

Thence go North 57° 27' 06" East a distance of 110.00 feet to a point and corner;

Thence go North 32° 32' 54" West a distance of 22.00 feet to a point and corner;

Thence go North 57° 27' 06" East a distance of 208.66 feet to a point and corner;

Thence go South 81° 42' 32" East a distance of 185.05 feet to a point and corner;

Thence go South 77° 26' 06" East a distance of 151.12 feet to a point and corner;

Thence go South 12° 33' 54" West a distance of 147.00 feet to a point and corner;

Thence go South 14° 54' 01" East a distance of 98.00 feet to a point and corner;

Thence go along a curve having a radius of 1600.00 feet and a delta of 17° 01' 51" a distance of 475.59 feet, subtended by a chord whose bearing is South 66° 35' 03" West and whose length is 473.85 feet to a point on the easterly right of way of Nicholson Drive and/or Louisiana Highway 30;

Thence go North 32° 29' 00" West 350.00 feet back to the POINT OF BEGINNING.

Tract A & B are described in accordance with the survey dated March 23, 1993, revised February 16, 1998, made by Paul C. Boudreaux, P.L.S., and entitled "Map Showing the Resubdivision of a 14.60 Acre Portion of Lots 12, 13, & 14, Arlington Plantation and the 0.67 Acre Section 1 of Lot 12, being the John H. Morgan Tract into Lots 'A', 'B', & 'C'...", a copy of which is recorded with the Clerk and Recorder of Mortgages for East Baton Rouge Parish, Louisiana as Original 129, Bundle 10906.

(Continued)

ITEM III:

**TRACT C-2-1-A-1**

One (1) certain piece or portion of ground, situated in Section 65, Township 7 South, Range 1 West, Greensburg Land District, East Baton Rouge Parish, Louisiana, and being designated as **TRACT C-2-1-A-1** on the Survey Map of a Portion of Arlington Plantation located in Section 65, T-7-S, R-1-W, G.L.D., East Baton Rouge Parish, Louisiana, recorded at Original 456, Bundle 9748, of the records of the Clerk and Recorder of Mortgages for East Baton Rouge Parish, Louisiana, and according to the map and survey of Paul C. Boudreaux, R.L.S., dated and revised March 23, 1993, a copy of which is annexed to the Act of Sale to Oakbrook Day Partnership filed April 16, 1993, and recorded with the Clerk and Recorder of Mortgages for East Baton Rouge Parish, Louisiana as Original 346, Bundle 10395, the property is more particularly described as follows:

Commencing at the intersection of the property line separating Nestledown and Arlington Plantation with the easterly right of way of Nicholson Drive and/or Louisiana Highway 30;

Thence along said right of way North 32° 29' West 127.75 feet to the POINT OF BEGINNING;

Thence from the POINT OF BEGINNING, measure thence North 32° 29' 00" West a distance of 85.00 feet;

Thence in an easterly direction along the arc of a curve to the right having a radius of 1,600.00 feet a distance of 475.59 feet, chord measuring North 66° 36' 52" East, and a chord length of 473.85 feet;

Thence North 14° 54' 01" West a distance of 98.00 feet;

Thence North 12° 33' 54" East a distance of 147.00 feet;

Thence South 77° 26' 06" East a distance of 42.61 feet;

Thence South 77° 22' 55" East a distance of 246.78 feet;

Thence North 79° 47' 50" East a distance of 168.50 feet;

Thence South 77° 13' 59" East a distance of 114.66 feet;

Thence South 49° 33' 34" East a distance of 195.78 feet;

Thence South 02° 35' 00" West a distance of 61.33 feet;

Thence North 87° 25' 00" West a distance of 75.00 feet;

Thence South 02° 35' 00" West a distance of 135.00 feet;

Thence North 87° 25' 00" West a distance of 735.43 feet actual (735.51 feet title);

(Continued)

BR.453197.2

· Thence in a southerly direction along the arc of a curve to the left having a radius of 1,528.00 feet, a distance of 251.04 feet, a chord measuring South 65° 56' 53" West, and a chord length of 250.75 feet;

Thence South 48° 45' 58" West a distance of 77.00 feet actual (76.62 feet title) at the POINT OF BEGINNING.

**ITEM IV:**

Right of use of a portion of Tract C-2-2 for fifteen (15) parking spaces, which Tract is located in Section 65, T-7-S, R-1-W, Greensburg Land District, East Baton Rouge Parish, Louisiana, being a portion of Arlington Plantation, as shown on the survey map entitled "Map Showing ALTA/ACSM Survey of Tract C-2-1-A-1, 5075 Nicholson Drive, Being a Portion of the Arlington Plantation, Located in Section 65, T-7-S, R-1-W, Greensburg Land District, East Baton Rouge Parish, Louisiana for Oakbrook Apartments LLC" prepared by Paul C. Boudreaux, Land Surveyor, dated February 15, 2000, revised February 22, 2000.

# EXHIBIT "A"

1.. The immovable property as more fully described in Exhibit "A" attached to the Mortgage, together with any and all present and future component parts thereof and attachments thereto and all rights, ways, privileges, advantages and servitudes of every type and description, now and/or in the future relating to and/or forming integral or component parts of the mortgaged property in accordance with the Louisiana Civil Code (the "Land");

2. All additional lands, estates and development rights hereafter acquired by Borrower for use in connection with the Land and the development of the Land and all additional lands and estates therein which may, from time to time, by supplemental mortgage or otherwise be expressly made subject to the lien of this Security Instrument;

3. The buildings, structures, fixtures, additions, enlargements, extensions, modifications, repairs, replacements and improvements now or hereafter erected or located on the Land (the "Improvements");

4. All easements, rights-of-way or use, rights, strips and gores of land, streets, ways, alleys, passages, sewer rights, water, water courses, water rights and powers, air rights and development rights, and all estates, rights, titles, interest, privileges, liberties, servitudes and advantages, tenements, hereditaments and appurtenances of any nature whatsoever, in any way nor or hereafter belonging, relating or pertaining to the Land and the Improvements and the reversion and reversions, remainder and remainders, and all land lying in the bed of any street, road or avenue, opened or proposed, in front of or adjoining the Land, to the center line thereof and all the estates, rights, titles, interests, dower and rights of dower, curtesy and rights of curtesy, property, possession, claim and demand whatsoever, both at law in in equity, of Borrower of, in and to the Land and the Improvements and every part and parcel thereof, with the appurtenances thereto;

5. All furnishings, machinery, equipment, fixtures (including, but not limited to, all heating, air conditioning, plumbing, lighting, communications and elevator fixtures) and other property of every kind and nature whatsoever owned by Borrower, in which Borrower has or shall have an interest, now or hereafter located upon the Land and the Improvements, or appurtenant thereto, and usable in connection with the present or future operation and occupancy of the Land and the Improvements (collectively, the "Personal Property"), and the right, title and interest of Borrower in and to any of the Personal Property which may be subject to any security interests, as defined in the Uniform Commercial Code, as adopted and enacted by the state or states where any of the Property is located (the "Uniform Commercial Code"), superior in lien to the lien of this Security Instrument, and all proceeds and products of the above;

6. All leases and other agreements affecting the use, enjoyment or occupancy of the Land and the Improvements heretofore or hereafter entered into, whether before or after the filing by or against Borrower of any petition for relief under 11 U.S.C. § 101, et seq., as the same may be amended from time to time (the "Bankruptcy Code") (the "Leases") and

EXHIBIT

2

all right, title and interest of Borrower, its successors and assigns therein and thereunder, including, without limitation, cash or securities deposited thereunder to secure the performance by the lessees of their obligations thereunder and all rents, additional rents, revenues (including, but not limited to, any payments made by tenants under the Leases in connection with the termination of any Lease), issues and profits (including all oil and gas or other mineral royalties and bonuses) from the Land and the Improvements whether paid or accruing before or after the filing by or against Borrower of any petition for relief under the Bankruptcy Code (the "Rents") and all proceeds from the sale or other disposition of the Leases and the right to receive and apply the Rents to the payment of the Debt (as hereinafter defined);

7. Any and all lease guaranties, letters of credit and any other credit support (individually, a "Lease Guaranty" and collectively, the "Lease Guaranties") given by any guarantor in connection with any of the Leases (individually, a "Lease Guarantor" and collectively, the "Lease Guarantors");

8. All rights, powers, privileges, options and other benefits of Borrower as lessor under the Leases and beneficiary under all Lease Guaranties;

9. All awards or payments, including interest thereon, which may heretofore and hereafter be made with respect to the Property, whether from the exercise of the right of eminent domain (including but not limited to any transfer made in lieu of or in anticipation of the exercise of the right), or for a change of grade, or for any other injury to or decrease in the value of the Property;

10. All proceeds of and any unearned premiums on any insurance policies covering the Property, including, without limitation, the right to receive and apply the proceeds of any insurance, judgments, or settlements made in lieu thereof, for damage to the Property;

11. All refunds, rebates or credits in connection with a reduction in real estate taxes and assessments charged against the Property as a result of tax certiorari or any applications or proceedings for reduction;

12. All proceeds of the conversion, voluntary or involuntary, of any of the foregoing including, without limitation, proceeds of insurance and condemnation awards, into case or liquidation claims;

13. The right, in the name and on behalf of Borrower, to appear in and defend any action or proceeding brought with respect to the Property and to commence any action or proceeding to protect the interest of Lender in the Property;

14. All agreements, contracts, certificates, instruments, franchises, permits, licenses, plans, specifications and other documents, now or hereafter entered into, and all rights therein and thereto, respecting or pertaining to the use, occupation, construction, management or operation of the Land and any part thereof and any Improvements or respecting any business or activity conducted on the Land and any part thereof and all right, title and

interest of Borrower therein and thereunder, including, without limitation, the right, upon the happening of any default hereunder, to receive and collect any sums payable to Borrowor thoroundor;

15. All tradenames, trademarks, servicemarks, logos, copyrights, goodwill, books and records and all other general intangibles relating to or used in connection with the operation of the Property;

16. All accounts and all accounts receivable, notes, notes receivable, drafts, acceptances, book debts and similar documents and other monies, obligations or indebtedness owing or to become owing to the Borrower arising from the sale, lease or exchange of goods or other property by the Borrower or the performance of services by the Borrower or under any contracts for any of the foregoing (whether or not yet earned by performance on the part of the Borrower), and all purchase orders for goods sold or leases or services rendered by the Borrower, and all returned, rejected or repossessed goods, the sale or lease of which gave rise to the account;

17. All inventory and all raw materials and other supplies, work in process and finished goods and any products assembled, compiled or processed therefrom and all substances, if any, commingled therewith or added thereto;

18. all equipment together with all additions, accessories, parts, attachments, special tools and accessories now or hereafter affixed thereto or used in connection therewith, and all replacements thereof and substitutions therefor;

19. All general intangibles including, without limitation (i) all contractual rights and obligations or indebtedness owing to the Borrower (other than accounts) from whatever source arising, (ii) all things in action, rights represented by judgments and claim arising out of tort, (iii) all goodwill, patents, patent licenses, trademarks, trademark licenses, trade names, service marks, trade secrets, rights in intellectual property, copyrights, permits and licenses, (iv) all rights or claims in respect of refunds for taxes paid, (v) all rights in respect of any pension plan or similar arrangement maintained for employees of the Borrower, and (vi) all deposit accounts of the Borrower with the Lender;

20. All chattel paper (including in the case of true leases the reversionary right of the Borrower in the leased goods which shall be considered embodied in the chattel paper), together with all returned, rejected or repossessed goods, the sale or lease of which shall have given or shall give rise to chattel paper, and all property and goods which are sold, leased, secured or the subject of or otherwise covered by, the Borrower's chattel paper, together with all reversionary rights embodied therein and all of the rights incident to such property and goods;

21. All documents or other receipts covering, evidencing or representing goods;

22. All books and records (including, without limitation, customer lists, credit files, computer programs, tapes, lists, punch cards, data processing software, transaction files, master

files, printouts and other computer materials and records) of the Borrower pertaining to any of the foregoing collateral;

23. All cash and non-cash proceeds of, and all other profits, rentals or receipts, in whatever form, arising from the collection, sale, lease, exchange, assignment, licensing or other disposition of, or realization upon, any of the foregoing collateral, including without limitation all claims of the Debtor against third parties for loss of, damage to or destruction of, or for proceeds payable under, or unearned premiums with respect to, policies of insurance and respect of, any of the foregoing collateral, and any condemnation or requisition payments with respect to any of the foregoing collateral, and including proceeds of all such proceeds, in each case whether now existing or hereafter arising;

24. Products of the foregoing collateral; and

25. Any and all other rights of Borrower in and to the items set forth above.